# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3351

_____

United States of America

*Plaintiff - Appellee*

v.

Kenneth Pappas

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: April 9, 2013
Filed: May 6, 2013

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Kenneth Pappas sexually abused his stepdaughter K.D. for five years starting at age nine, forcing her to perform sexual acts, wear specific clothing, and watch videos he recorded of the abuse. He pled guilty to one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and 2251(e) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and

2252A(b)(2).  The district court[1] sentenced Pappas to the statutory maximum of 480 months after applying several sentencing enhancements.  Pappas appeals, challenging two of the enhancements and the validity of the sentencing guidelines relating to sexual exploitation of a child.  We affirm.

Pappas met K.D. when she was approximately two years old after he began dating her mother.  Pappas and K.D.'s mother married approximately two years later, and Pappas began sexually abusing K.D. in approximately 2006 when she was nine.  Over a period of approximately five years Pappas repeatedly forced K.D. to engage in sexual activity with him while her mother was at work.  Pappas made K.D. view adult pornographic videos with him, and several times he forced her to wear clothing similar to that worn by the women in the videos.  Pappas also recorded two videos of himself sexually abusing K.D. which show K.D. crying out in pain and asking Pappas to stop.  Pappas also occassionally made K.D. watch these videos while he abused her.  K.D. reported the abuse after Pappas and K.D.'s mother separated in 2011.

Pappas was indicted on three counts.  The first and second counts alleged that between 2008 and 2011 Pappas had enticed K.D. to engage in sexually explicit conduct for the purpose of producing two separate videos, in violation of 18 U.S.C. § 2251(a) and 2251(e).  The third count alleged that Pappas had "knowingly possessed and attempted to possess visual depictions of a minor engaged in sexually explicit conduct," in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b)(2).  Pappas pled guilty to counts one and three, and count two was dismissed.

A presentence investigation report (PSR) was drafted for Pappas's sentencing.  It grouped counts 1 and 3, U.S.S.G. § 3D1.2(b), and determined Pappas's base offense level to be 32, id. § 2G2.1, see id. § 3D1.3(a).  It recommended adding two levels

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

because the offense involved a minor who was over twelve but under sixteen, id. § 2G2.1(b)(1)(B), two levels because the offense involved the commission of a sexual act or sexual contact, id. § 2G2.1(b)(2)(A), four levels because the offense involved material portraying sadistic or masochistic conduct or other depictions of violence, id. § 2G2.1(b)(4), and two levels because K.D. had been in Pappas's custody, care, or supervisory control, id. § 2G2.1(b)(5). In addition the PSR recommended a five level enhancement because Pappas had engaged in a pattern of activity involving prohibited sexual conduct. Id. § 4B1.5(b)(1). After three levels were subtracted for acceptance of responsibility, id. § 3E1.1, Pappas's total offense level was 44. The total offense level was treated as 43, however, because that is the highest offense level on the sentencing table. Id. ch. 5, pt. A, cmt. n.2.

Pappas objected to the PSR, requesting that the court "categorically reject" the use of the sentencing guidelines in his case. Pappas specifically objected to the four level enhancement under § 2G2.1(b)(4) for depiction of "sadistic or masochistic conduct or other depictions of violence" and the five level enhancement under § 4B1.5(b)(1) for "a pattern of activity involving prohibited sexual conduct." He also sought a downward variance, arguing that § 2G2.1 is not based on empirical analysis since it originated in Congress. At the sentencing hearing the defense elicited testimony from clinical psychologist Frank Sutton Gersh who had spoken with Pappas. Based on their interactions, Gersh concluded that Pappas is an "incest offender[]" and thus has "the lowest probability" of reoffending.

The district court overruled Pappas's objections. It noted that the guidelines recommended life imprisonment, but that the statutory maximum on counts 1 and 3 limited Pappas's sentence to 40 years in prison. After "consider[ing] each and every one" of the sentencing factors in § 3553(a), the court sentenced Pappas to 480 months, consisting of consecutive sentences of 360 months on count 1 and 120 months on count 3. The district court concluded that Gersh's testimony was unconvincing, that Pappas's sexual abuse of K.D. was frequent, and that Pappas "is

a danger to society." It stated that "480 months is the sentence that is sufficient but not greater than necessary to achieve the goals of sentencing whether or not that's the sentence that the guidelines would call for. In the event that the guidelines would fall below 480 months, the Court would depart upward or vary upward to 480 months."

Pappas appeals, challenging the application of the four level enhancement under § 2G2.1(b)(4) and the five level enhancement under § 4B1.5(b)(1). He also contends that § 2G2.1 should be categorically rejected because it is not based on empirical analysis. When reviewing the district court's calculation of the sentencing guidelines advisory sentencing range, "[w]e review the district court's factual findings for clear error and its construction and application of the Guidelines de novo." United States v. Raplinger, 555 F.3d 687, 693 (8th Cir. 2009).

Pappas first challenges the district court's application of the four level enhancement under § 2G2.1(b)(4) for offenses involving "material that portrays sadistic or masochistic conduct or other depictions of violence." The guidelines do not define the terms "sadistic," "masochistic," or "depictions of violence," but we have concluded that the ordinary meaning of those terms mean that "images involving . . . an adult male performing anal sex on a minor girl . . . are per se sadistic or violent." United States v. Street, 531 F.3d 703, 711 (8th Cir. 2008) (citing United States v. Diaz, 368 F.3d 991, 992 (8th Cir. 2004)). The district court applied the four level enhancement after viewing a video which showed Pappas sexually abusing K.D. The district court stated that the video showed the child being "penetrated vaginally, anally, with a finger, with a dildo, and with a penis." The court found it "particularly distressing to hear the child ask the defendant to stop, that she is being hurt, and to hear the victim refer to the defendant as 'Daddy.'"

Pappas argues that the application of a four level enhancement for sadistic or masochistic conduct resulted in impermissible double counting because he had already received a two level enhancement under § 2G2.1(b)(2)(A) for offenses

-4-

involving the commission of a sexual act or sexual conduct. We disagree that it is impermissible double counting to apply enhancements under both § 2G2.1(b)(2)(A) and § 2G2.1(b)(4) based on the same act. Unlike the definitions of "sadistic," "masochistic," or "depictions of violence" under § 2G2.1(b)(4), the terms "sexual act" and "sexual contact" under § 2G2.1(b)(2)(A) need not involve penetration, 18 U.S.C. § 2246(2)–(3); see United States v. Yarrington, 634 F.3d 440, 452 (8th Cir. 2011).

Double counting is prohibited only if the guidelines at issue specifically forbid it. See United States v. Myers, 598 F.3d 474, 477 (8th Cir. 2010) (citation omitted); U.S.S.G. § 1B1.1 cmt n.4(A). Pappas has not pointed to any guideline provision forbidding the application of enhancements under both § 2G2.1(b)(2)(A) and § 2G2.1(b)(4). Several courts have concluded that it is not impermissible double counting to apply both these enhancements based on the same conduct. United States v. Mouton, 481 F. A'ppx 96, 97 (5th Cir. 2011) (unpublished); see United States v. McDade, 399 F. App'x 520, 523 (11th Cir. 2010) (unpublished). We conclude that the district court did not err in applying the four level enhancement under § 2G2.1(b)(4).

Pappas next argues that the district court erred in applying a five level enhancement under § 4B1.5(b)(1) for "engag[ing] in a pattern of activity involving prohibited sexual conduct." A "pattern of activity" under § 4B1.5(b)(1) must include at least two separate occasions of prohibited sexual contact with a minor. § 4B1.5, cmt. n.4(B)(i). Pappas argues that § 4B1.5(b)(1) should be categorically rejected and that it is only applicable where there is evidence that a defendant engaged in prohibited sexual activity with more than one minor.

In United States v. Fleetwood, 457 F. App'x 591, 592 (8th Cir. 2012) (unpublished), we applied § 4B1.5(b)(1) to a defendant who had abused a minor on multiple occasions. There, we stated that the "plain language" of the application note in § 4B1.5(b)(1) shows that it applies where a defendant engaged in prohibited sexual

activity "on at least two separate occasions . . . with a minor." Id. We also explained that the application notes to § 4B1.5(b)(1) had been amended in 2003 to read "a minor" instead of "two minor victims." Id. (citing app. C (vol. II) amend. 649 (2003)). The evidence in this case shows that Pappas abused K.D. for approximately five years and made two separate videos of the sexual abuse. His conduct shows a "pattern of activity involving prohibited sexual conduct" and the district court did not err in applying the five level enhancement under § 4B1.5(b)(1).

Pappas finally argues that § 2G2.1 should be categorically rejected as a product of congressional mandates rather than the expertise of the sentencing commission. See Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines, 24 Fed. Sent'g Rep. 102 (2011). Even assuming the district court "may disregard the child pornography sentencing guideline on policy grounds," it is "not required to do so." United States v. Black, 670 F.3d 877, 882 (8th Cir. 2012). Pappas's challenge to § 2G2.1 is also "not properly made to this court" because on appeal we are "limited to determining the substantive reasonableness of a specific sentence where the advisory guidelines range was determined" in accordance with the guidelines. United States v. Shuler, 598 F.3d 444, 448 (8th Cir. 2010).

We review the substantive reasonableness of Pappas's sentence for abuse of discretion. United States v. Toothman, 543 F.3d 967, 970 (8th Cir.2008). We must first ensure that the district court committed no significant procedural error. Gall v. United States, 552 U.S. 38, 51 (2007). If no significant procedural error is found, we then consider "the totality of the circumstances" in determining if an abuse of discretion occurred. Id. A sentence within the advisory guidelines range is presumptively reasonable on appeal. United States v. Spotted Elk, 548 F.3d 641, 679–80 (8th Cir. 2008). Pappas argues that his sentence is substantively unreasonable because the district court stated at his sentencing hearing that it was "questionable" whether Pappas had ever "offended against children before." Pappas's

total offense level was 44, but the district court properly noted that the guidelines limited his total offense level to 43. U.S.S.G. ch. 5, pt. A, cmt. n.2. The district court then carefully considered the arguments made by Pappas at sentencing and the § 3553(a) factors and concluded that Pappas "is a danger to society" and that his sexual abuse of K.D. had been frequent. The record indicates that the district court considered all the relevant factors and it did not abuse its wide discretion in sentencing Pappas.

Furthermore, even if Pappas were successful on any issues he raises on appeal, the district court made sufficient findings that his final sentence would be unchanged regardless of his guideline calculations. The district court stated that "[i]n the event that the guidelines would fall below 480 months, the Court would depart upward or vary upward to 480 months." Since the district court explicitly stated that it would have imposed a 480 month sentence regardless of the guidelines, any error in applying the guidelines would be harmless. See United States v. Davis, 583 F.3d 1081, 1094 (8th Cir. 2009).

Accordingly, we affirm the judgment of the district court.

_____