# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2689
_____

United States of America

*Plaintiff - Appellee*

v.

Cynthia Ann Mitteness

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 12, 2018
Filed: June 28, 2018

_____

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Cynthia Ann Mitteness ("Mitteness") pleaded guilty to conspiracy to transport a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) and (e). She was sentenced to 324 months' imprisonment. Mitteness

appeals her sentence, arguing (1) the district court[1] impermissibly applied a two-level enhancement for undue influence and a two-level enhancement for use of a computer and (2) the district court abused its discretion and imposed a substantively unreasonable sentence. We affirm.

## I. Background

This case involves Mitteness's grooming of her nine-year-old daughter ("M.L.M.") to engage in illegal sex acts with Michael Lee Williams ("Williams"), a man whom Mitteness had known for fifteen years and knew was a convicted sex offender.

Mitteness and Williams reconnected in September 2015 and began communicating through Facebook messages. In April or May 2016, Mitteness encouraged M.L.M. to talk to Williams online through Mitteness's Facebook account. Williams sent nude videos of himself to Mitteness's account. Mitteness watched the videos with M.L.M., described their contents to M.L.M. using child-friendly terminology, and instructed M.L.M. on how to engage with the material. Mitteness posed M.L.M., took nude and partially nude pictures of M.L.M. on her iPad Mini, and sent some of the photos to Williams.

On June 10, Mitteness drove M.L.M. from their home in Minnesota to Iowa for the weekend. An hour after Mitteness and M.L.M. arrived at a hotel in Johnston, Iowa, Williams visited their room. At one point, Mitteness grabbed and placed M.L.M.'s hand on Williams's genitals. Later, Mitteness performed oral sex on Williams in front of M.L.M., encouraging M.L.M. to participate. M.L.M. ran crying to the bathroom.

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

On June 12, Mitteness and M.L.M. drove to Williams's home in Runnells, Iowa. During the visit, Williams massaged M.L.M., on a bed, while they were both naked. Mitteness was also on the same bed. Williams later claimed his genitals touched various parts of M.L.M.'s body during the massage. Mitteness told M.L.M. if she shared what happened during the trip to Iowa, Mitteness would never talk to her again.

A federal grand jury indicted Mitteness on one count of conspiracy to transport a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) and (e), and one count of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a). Mitteness pleaded guilty to the conspiracy charge.

The Presentence Investigation Report ("PSR"), prepared by the U.S. Probation Office, recommended a two-level parental-relationship enhancement under United States Sentencing Guidelines Manual § 2G1.3(b)(1)(A). The PSR also recommended a two-level enhancement based on the presence of undue influence under U.S.S.G. § 2G1.3(b)(2)(B) and a two-level enhancement for the use of a computer under U.S.S.G. § 2G1.3(b)(3)(A).

Mitteness objected to the undue-influence and use-of-a-computer enhancements at sentencing. The district court overruled the objections, adopted the PSR recommendations, and calculated Mitteness's guideline imprisonment range at 324 to 405 months. Mitteness appeals.

## II. Discussion

We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, . . . [or] selecting a sentence based on clearly erroneous facts." Gall v. United States, 552 U.S. 38, 51 (2007). We then review the substantive reasonableness of the sentence "under an abuse-of-discretion standard." Id.

## A. Application of Enhancements

"We review the district court's construction and application of the sentencing guidelines *de novo* and its factual findings for clear error." United States v. Hagen, 641 F.3d 268, 270 (8th Cir. 2011); see also United States v. Kramer, 631 F.3d 900, 904 (8th Cir. 2011) ("The government must prove the facts needed to support a sentencing enhancement by a preponderance of the evidence, and we review the district court's fact findings for clear error." (internal citation omitted)).

### 1. Undue Influence

First, Mitteness argues the application of the undue-influence enhancement and the parental-relationship enhancement constitutes impermissible double counting. Generally, courts may consider a particular aspect of a defendant's conduct or identity more than once when applying the Guidelines, as long as each reference serves a particular purpose. See United States v. Kenney, 283 F.3d 934, 938 (8th Cir. 2002) ("[T]he Commission intended to include enhancements for every applicable aspect of the criminal conduct, to be added together cumulatively, unless the Guidelines themselves direct otherwise.").

"Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Myers, 598 F.3d 474, 476 (8th Cir. 2010) (quoting United States v. Hipenbecker, 115 F.3d 581, 583 (8th Cir. 1997)); see also United States v. Chapman, 614 F.3d 810, 812 (8th Cir. 2010) (quoting Hipenbecker, 115 F.3d at 583) (noting "double counting is permissible if the Sentencing Commission so intended and each guideline section furthers an independent purpose of sentencing"). The issue here is whether the type of harm contemplated in the parental enhancement *fully accounts for* the type of harm considered in the undue-influence enhancement.

The parental-relationship enhancement is based on the existence of a specific type of relationship. See U.S.S.G. § 2G1.3(b)(1)(A) (allowing for a two-level enhancement "[i]f the defendant was a parent, relative, or legal guardian of the minor"). Commentary for § 2G1.3(b)(1)(A) counsels the court to "look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship." U.S.S.G. § 2G1.3 cmt. n.2. The parental enhancement is not dependent on the relative ages of the parent and the child, the offense-related behavior, or the actual extent of the defendant's influence on the minor.

The undue-influence enhancement, in contrast, relates to an adult's effect on the voluntariness of a minor's behavior. See id. § 2G1.3(b)(2)(B). Section 2G1.3(b)(2)(B) directs the court to apply a two-level enhancement if the adult defendant "unduly influenced a minor to engage in prohibited sexual conduct." Accompanying commentary instructs the court to engage in a fact-based inquiry into offense-specific conduct:

> In determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior. The voluntariness of the minor's behavior may be compromised without prohibited sexual conduct occurring.

Id. § 2G1.3 cmt. n.3. The commentary also provides a rebuttable presumption that the undue-influence enhancement applies when the defendant is at least ten years older than the minor victim. See id.; see also Hagen, 641 F.3d at 270. Although a court may determine the presence of undue influence is more egregious *because of* a defendant's parental status, as long as the undue-influence enhancement accounts for a separate harm, the enhancement nevertheless may still apply.

The facts recounted above undisputedly show an adult exerting undue influence over a minor's obvious resistance to the acts forced upon her. We have little difficulty concluding Mitteness's actions with respect to M.L.M. went above and

beyond the parent-child relationship. As the undue-influence enhancement accounts for separate harms than the parental enhancement, we determine the district court did not double count in its calculations.

## 2. Use of a Computer

Second, Mitteness argues the use-of-a-computer enhancement was incorrectly applied. Section 2G1.3(b)(3) allows for a two-level enhancement:

> [i]f the offense involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor.

Focusing on Subpart A, Mitteness contends the enhancement only applies to the party who used a computer to communicate directly with a minor. See U.S.S.G. § 2G1.3 cmt. n.4 (noting the section "is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor"). Therefore, Mitteness argues, because she did not communicate with M.L.M. via Facebook, the enhancement should not apply.

Even if our review of the enhancement were limited to Subpart A, this subpart covers the events at issue. Mitteness sat down with M.L.M. and engaged M.L.M. in an interactive process involving online videos, computers, and Facebook. The district court found Mitteness took these actions in part to "persuade [M.L.M.] to allow this sexual abuse to happen, to induce her to participate in it, to entice her, to teach her to be a more effective victim. . . . [T]he idea is, the daughter either becomes accustomed to seeing this kind of behavior or becomes intrigued by it." As such, the district court concluded this conduct was intended to "persuade, induce, entice, coerce, or facilitate the travel of [M.L.M.] to engage in prohibited sexual conduct." U.S.S.G. § 2G1.3(b)(3)(A). To the extent Mitteness argues the commentary conflicts with the

plain meaning of the guideline, the guideline controls. See United States v. Gibson, 840 F.3d 512, 514 (8th Cir. 2016) (per curiam) ("When there is a conflict between a guideline and the commentary, it is the guideline that controls and not vice versa." (citing Stinson v. United States, 508 U.S. 36, 38 (1993)). We find no clear error in the district court's findings, and we conclude Subpart A was properly applied.

Moreover, Subpart B expressly applies to Mitteness's interactions with Williams. See U.S.S.G. § 2G1.3(b)(3)(B) (applying a two-level enhancement for the use of a computer to "entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor"); Gibson 840 F.3d at 515 (holding that note 4 does not apply to Subpart B of § 2G1.3(b)(3)). Without Facebook and the use of a computer, the events at issue could not have been planned or executed. The district court, therefore, correctly applied the use-of-a-computer enhancement.

## B. Abuse of Discretion

Mitteness argues the district court abused its discretion and imposed a substantively unreasonable sentence. "A district court abuses its discretion when it . . . gives significant weight to an improper or irrelevant factor[] or . . . considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (citation omitted); see also Gall, 552 U.S. at 51 (noting a reliance on "clearly erroneous facts" constitutes an abuse of discretion).

At sentencing, the district court carefully reviewed Mitteness's personal history, as well as the 3553(a) factors, the applicable statutory penalties, the advisory guidelines, and the many exhibits submitted by Mitteness. See Feemster, 572 F.3d at 461 (noting "[w]e do not require a district court to provide a mechanical recitation of the § 3553(a) factors," but the record must make clear "the district court actually considered the § 3553(a) factors in determining the sentence" (alteration in original) (quoting United States v. Walking Eagle, 553 F.3d 654, 659 (8th Cir. 2009))); United

States v. Morais, 670 F.3d 889, 893 (8th Cir. 2012) (noting the district court has "substantial discretion" in weighing the statutory sentencing factors).

Mitteness argues the district court based the sentence on improper, emotionally-charged factors. Although "a sentence must not be imposed out of unrestrained emotion," sentencing courts are not expected to be emotionless, especially in the face of conduct generally considered to shock the conscious. United States v. Melanson, 663 F. App'x 491, 494 (8th Cir. 2016) (per curiam). Here, the district court highlighted the routine frequency of child sexual-abuse cases involving a parent and acknowledged the inherent challenges posed in sentencing:

> And so as a judge, you have to figure out how much of the reaction you're having is justified, how much of it is a knee-jerk reaction from one mother to another mother's actions. Sometimes you have to figure out how much of it is the very graphic and vile nature of what we see here.

Accordingly, the district court tied Mitteness's sentence to the facts and took affirmative steps to guard against possible improprieties.

As discussed above, courts may consider a particular aspect of a defendant's conduct or identity, such as the fact that the defendant was the mother of the victim, several times during the course of sentencing. See Kenney, 283 F.3d at 938. For example, the district court considered Mitteness's role as M.L.M.'s mother as both a mitigating *and* an aggravating factor. Additionally, the practical implication of the fact that Mitteness is a mother is that the relationship may be mentioned in the ordinary course of a hearing, with or without reference to the Guidelines or § 3553(a). Finally, to the extent the district court used "download" instead of "open" or "access" when referencing the videos Mitteness watched with M.L.M. via Facebook, Mitteness's argument that these references somehow demonstrate a lack of understanding by the district court as to the facts is immaterial and disingenuous.

We therefore conclude the district court did not rely on clearly erroneous facts, improperly weigh Mitteness's maternal status, or commit a clear error of judgment. As the district court correctly calculated the guideline range, heard arguments from both parties as to the appropriate sentence, properly considered the § 3553(a) factors, and documented all three of these steps on the record, we conclude the district court did not abuse its discretion or commit procedural error in sentencing Mitteness. See Gall, 552 U.S. at 53.

We also conclude the district court did not abuse its discretion in imposing the ultimate sentence. As Mitteness's sentence of 324 months' imprisonment is at the bottom of the guideline range of 324 to 405 months, we presume the sentence to be substantively reasonable. See United States v. Ruelas-Mendez, 556 F.3d 655, 657 (8th Cir. 2009) ("Because the court imposed a sentence within the advisory guideline range and consistent with the recommendation of the Sentencing Commission, we presume that it is substantively reasonable.").

As sentencing is an individualized inquiry, Mitteness's list of unrelated sexual abuse cases with shorter imprisonment terms is immaterial. See Gall 552 U.S. at 52 (noting the "federal judicial tradition" of the "sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." (internal citation omitted)). Mitteness does not rebut the presumption of reasonableness, nor does the record demonstrate a minimum guideline sentence was an abuse of the district court's discretion. Thus, we conclude the sentence is substantively reasonable.

Accordingly, we affirm the judgment of the district court.

_____